## Brown v.
## Hyatt-Allen American Legion
## Post No. 538
*[Cite as 8 AOA 257]*

*Case No. L-89-336*
*Lucas County, (6th)*
*Decided November 9, 1990*

*Alan R. Kirshner, for Appellants.*

*Scott A. Gilliam, for Appellees.*

HANDWORK, P.J.

This matter is before the court on appeal from the October 10, 1989 judgment of the Lucas County Court of Common Pleas, which granted summary judgment in favor of appellee, Hyatt-Allen American Legion Post No. 538 ("the Post"), and dismissed the complaint of appellant, Gertrude Brown. On appeal, appellant asserts the following sole assignment of error:

"THE TRIAL COURT ERRED IN GRANT-ING SUMMARY JUDGMENT TO A BAR WHO CONTINUED TO SELL INTOXI-CANTS TO A NOTICEABLY INTOXICAT-ED PERSON, WHO THEN ASSAULTED AN INNOCENT FELLOW PATRON."

On October 13, 1988, appellant filed a complaint against appellee claiming that appellee negligently continued to serve alcohol to Lavern Woods, when she was already intoxicated. It is further alleged that Woods later assaulted appellant causing her injury. Appellant's first cause of action alleged negligence *per se* based upon a violation of R.C. 4399.18. Appellant's second cause of action alleged common law negligence based on appellant's breach of its duty to exercise reasonable care to protect its patrons from the violent acts of intoxicated third parties.

Appellee moved for summary judgment admitting only that on October 16, 1986, it was operating an establishment which sells beer and intoxicating liquors. For purposes of summary judgment, appellee assumed that the following facts derived from the deposition of appellant were true.

About 9:30 pm. on the date in question, appellant (a regular customer) came to the Post with her sister, Peggy Jones. Although neither of them were members, they were admitted by the Post. They sat at a booth while they talked and drank. They were later joined by appellant's two other sisters, Brenda Wood and Nancy Caston, and appellant's boyfriend, Billy Logan.

Sometime around 10:00 p.m., appellant went into the rest room, which was empty at the time. While appellant was in a stall, fern Woods entered the rest room. When appellant came out of the stall and proceeded to the wash basin, she saw that Woods' purse was in the basin and asked Woods to move it. Woods did not respond, but she did move her purse. Appellant washed her hands and returned to her booth.

About 11:30 p.m., appellant was preparing to leave the Post. She again went into the rest room. In the rest room were Woods, Tammy Williams (the bartender), and another unidentified woman. While appellant was in a stall, she could overhear Woods tell the other women that "Britt's used-to-be girl-friend was out, is out there now, she was in here when I was in here earlier." After appellant came out of the stall and washed her

hands, she heard Woods say "she's out there now." Appellant responded, "yes, I'm the same person. I didn't say anything to you then, I'm not now." Appellant then began to leave the rest room, but instinctively turned around and saw Woods' raised hand holding a straight razor. Woods' hand came down before appellant could react and appellant felt a scratch on her face. Appellant's face and neck were cut. Woods raised her hand a second time, but appellant blocked the blow with her hand and purse. The next thing appellant remembered was hearing two women say appellant had been cut, and they took her into the rest room to clean her up. They then took her into the kitchen to get some ice. As they left the rest room, Logan and another man were holding Woods, who was trying to get loose and was yelling that she wanted to get appellant and that she wanted to kill appellant.

The attack came as a complete surprise to appellant. She stated that she knew of Woods because she worked at the grocery store selling lottery tickets and because Britt (appellant's former boy-friend) was now dating Woods. At one point, appellant stated that she did not see Woods enter the Post, but later stated that she saw Woods intoxicated when she entered the Post. About 10:00 p.m. that night, appellant had seen Woods sitting at the bar drinking with Britt, who was buying her drinks. Appellant stated that she had seen Williams serve the drinks to Britt and Woods. Appellant also saw Woods walking around the room and observed that Woods appeared to becoming more intoxicated over the course of the evening because she staggered and was talking loudly. Appellant had seen Woods at the Post before in an intoxicated state.

Appellant and Woods never communicated with each other that night, except for the meetings in the rest room. Appellant did not know of any reason for the attack. Appellant stated that she and Woods had no relationship whatsoever with each other and that the attack was unprovoked.

Appellee argued that summary judgment was proper because there was no violation of R.C. 4399.18 since there was no proof of a "sales of beer or liquor in violation of R.C. 4399.18, no proof that Woods was drinking alcoholic beverages, or no proof that appellee had actual knowledge that Woods was intoxi-

cated when alcoholic drinks were allegedly served to her. In addition, appellee argued that a common law action for negligence could not be maintained since the attack was unforeseeable and, therefore, appellee owed no duty to exercise reasonable care to protect appellant from the attack.

Appellant responded to the motion for summary judgment and submitted two affidavits to the court. Peggy Jones attested that she had seen Woods enter the Post with an unsteady gait and that she appeared to be tipsy. Jones later saw Woods sitting at the bar drinking an alcoholic beverage, which Jones had seen the bartender pour. Nancy Caston attested that she had seen Woods sitting at the bar drinking out of a glass which the Post uses to serve alcoholic drinks. Both Jones and Caston saw Britt pay for the drinks. In addition, both Jones and Caston stated that they saw, over the course of the evening, that Woods' gait become more unsteady and that her eyes were glassy, red, and blood shot.

Appellant also submitted the affidavit of Chris Layne, Ph.D., who attested that in his expert opinion, there is a clear and causal relationship between the consumption of alcohol and aggressive behavior.

Appellant argued in response to the motion for summary judgment that only proof of service, and not sale, of the alcoholic beverage was necessary to violate the statute. Further, appellant argued that the statute only requires the showing of negligent service to an intoxicated person, not actual knowledge that an intoxicated person is being served alcohol. Finally, appellant argued that the issue of foreseeability is a jury question.

The trial court summarily granted summary judgment to appellee citing only to *Great Central Ins. Co. v. Tobias* (1988), 37 Ohio St. 3d 127. On appeal, appellant asserts that the court erred in grant summary judgment. Since the trial court did not set forth the basis for its decision, appellant's arguments on appeal merely expound upon the arguments raised by appellee in its motion for summary judgment.

On appeal of a summary judgment order, a reviewing court must determine whether there is any genuine issue of material fact, whether reasonable minds can come to but one conclusion, which is adverse to the non-moving party when the evidence is construed

most strongly in favor of the non-moving party, and whether the moving party is entitled to judgment as a matter of law. Civ. R. 56(C) and *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66.

In this case, neither party argues that there are any material issues of fact in dispute. Therefore, we now turn to the determination of the law to be applied and its application to the facts of this case.

At common law, one who was injured by the acts of an intoxicated person could not recover for such damage from the person who sold an intoxicating beverage to the intoxicated person. *Settlemyer v. Wilmington Veterans Post No. 49* (1984), 11 Ohio St. 3d 123, 125 and *Mason v. Roberts* (1973), 33 Ohio St. 2d 29, 33. The law presumed that the proximate cause of injury was the consumption of the alcohol, not the sale. *Mason v. Roberts, supra.* After the enactment of R.C. 4399.01 in 1953, anyone who sells or serves alcohol to a person who is a subject of an order of the Department of Liquor, which prohibits the sale of intoxicating liquor to that person, is strictly liable for injury or damage caused by a violation of this statute. See *Mason v. Roberts, supra,* at 32. Therefore, the common law recognized two exceptions to the common law rule: (1) where the seller knew the purchaser could not refrain from drinking and (2) where the sale violated a statute. *Id.*

Prior to the enactment of R.C. 4399.18, two statutes were commonly used to invoke the second exception to the common law rule. R.C. 4301.22.[1] was interpreted as imposing a statutory duty upon liquor permit holders to exercise reasonable care to protect the public from the violent acts of the intoxicated third persons while the public was on the premises. *Great Central Ins. Co. v. Tobias* (1988) 37 Ohio St. 3d 127, 128-129. R.C. 4301.22 has also been interpreted as imposing the same duty upon liquor permit holders regarding injuries to third parties which occur off the premises. *Gressman v. McClain* (1988), 40 Ohio St. 3d 359, 362, rehearing denied (1989), 41 Ohio St. 3d 723. Cf. *Smith v. The 10th Inning, Inc.* (1990), 49 Ohio St. 3d 289 (The intoxicated patron has no cause of action against the liquor permit holder for injury or property damage occurring off the premises, which was proximately caused by the patron's own intoxication).

R.C. 4301.69 was also interpreted as imposing the same duty upon a social host and tavern regarding the service of alcohol to a minor. *Mitseff v. Wheeler* (1988), 38 Ohio St. 3d 112.

In 1986, the General Assembly attempted to codify the existing common law policy regarding the liability of others for the actions of intoxicated persons. See *Gressman v. McClain, supra,* at 362 and R.C. 4399.18. This section reads as follows:

"§ 4399.18 Limitations on liability for acts of intoxicated person.

"Notwithstanding section 2307.60 and except as otherwise provided in this section and in section 4399.01 of the Revised Code, no person, and no executor or administrator of the person, who suffers personal injury, death, or property damages as a result of the actions of an intoxicated person has a cause of action against any liquor permit holder or his employee who sold beer or intoxicating liquor to the intoxicated person unless the injury, death, or property damages occurred on the permit holder's premises or in a parking lot under his control and was proximately caused by the negligence of the permit holder or his employees. A person has a cause of action against a permit holder or his employee for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:

"(A) The permit holder or his employee knowingly sold an intoxicating beverage to at least one of the following:

"(1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;

"(2) A person in violation of division (C) of section 4301.22 of the Revised Code;

"(3) A person in violation of section 4301.69 of the Revised Code;

"(B) The person's intoxication proximately caused the personal injury, death, or property damages.

"Notwithstanding sections 4399.02 and 4399.05 of the Revised Code, no person, and no executor or administrator of the person, who suffers personal injury, death, or property damage as a result of the actions of an intoxicated person has a cause of action

against the owner of a building or premises who rents or leases the building or premises to a liquor permit holder against whom a cause of action may be brought under this section, except when the owner and the permit holder are the same person."

Under R.C. 2307.60, anyone injured by a criminal act may recover their full damages in a civil action R.C. 4399.18 limited this right with regard to cases involving the liability of liquor permit holders for damages caused by intoxicated persons. In those cases, R.C. 4399.01 and R.C. 4399.18 set forth the exclusive remedies available to the injured party.[2] Wherefore, we find that appellant's common law claim of negligence is not actionable in this case.

We now turn to the issue of whether appellant's statutorily permitted negligence action should have been dismissed on summary judgment.

As we stated above, at common law, proof of a violation of a statutory duty was sufficient to hold a liquor permit holder liable for damages or injuries caused by an intoxicated person who was served an intoxicating beverage by the liquor-permit holder. R.C. 4301.22(B) was commonly interpreted as giving liquor permit holders a statutory duty to observe whether a patron was intoxicated and prohibited them from serving an intoxicating beverage to such intoxicated patron. R.C. 4301.22(B) and (C) did not explicitly require that the liquor permit holder knowingly serve an intoxicating beverage to the intoxicated person. However, the Supreme Court of Ohio held that such a requirement was implicit because to hold otherwise would make the liquor permit holder potentially liable for every intoxicating beverage served. *Gressman v. McClain, supra,* at 363. The *Gressman* court also noted that this view was adopted by the General Assembly in R.C. 4399.18(A). We hold that this reasoning applies to any case under R.C. 4399.18, whether the injury occurs on or off the premises of the liquor permit holder. Therefore, we hold that a liquor permit holder is not liable for the acts of intoxicated persons to whom it served an intoxicating beverage unless the liquor permit holder had actual knowledge that the patron was already intoxicated.

In the case before us, there is no evidence which indicates that appellee had knowledge of Woods' intoxication prior to its alleged service of intoxicating beverages to Woods. Therefore, we find that the only conclusion which reasonable minds can come to based upon the evidence, which is construed most strongly in favor of appellant, is that appellee did not violate R.C. 4399.18. Therefore, appellee is entitled to judgment as a matter of law.

Wherefore, we find appellant's sole assignment of error not well-taken.

Accordingly, we find that substantial Justice has been done the party complaining. The judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App. R. 24, appellant is hereby ordered to pay the court costs incurred in connection with this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.

ABOOD, J., concurs in judgment only.

---

[1] R.C.4301.22 imposes certain restrictions upon liquor permit holders, including the following:

"(B) No sales shall be made to an intoxicated person.

"(C) No intoxicating liquor to any individual who habitually drinks intoxicating liquor to excess, or to whom the department has, after investigation, determined to prohibit the sale of such intoxicating liquor, because of cause shown by the husband, wife, father, mother, brother, sister, or other person dependent, upon, or in charge of such individual, or by the mayor of any municipal corporation, or a township trustee of any township in which the individual resides. The order of the department in such case shall remain in effect until revoked by the department."

[2] We note that the Supreme Court of Ohio held that R.C. 4399.01 is not the exclusive remedy against a liquor permit holder in *Mason v. Roberts, supra,* at paragraph one of the syllabus. However, this case was decided prior to the enactment of R.C. 4399.18. Therefore, we find that it is no longer controlling.